Filed 6/25/26  P. v. Fitts CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B339879 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA082591) |
| v. | |
| DAVID JAMES FITTS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

David James Fitts appeals from an order denying his petition for resentencing under Penal Code section 1172.6.[1]  A jury convicted Fitts of the 1992 murder of Charles Dimmitt and found that Fitts committed the murder during the commission of an attempted robbery.  The jury also convicted Fitts of the attempted voluntary manslaughter of a second victim who was present during the murder, and of the attempted robberies of both victims.  After an evidentiary hearing, the trial court found beyond a reasonable doubt that Fitts was guilty of murder under current law, rendering him ineligible for resentencing under section 1172.6, because he acted with express malice or, in the alternative, he was a major participant in the attempted robberies and acted with reckless indifference to human life.

We conclude that substantial evidence supports the trial court's finding that Fitts remains guilty of murder under current law because he was a major participant in the attempted robberies and acted with reckless indifference to human life.  Accordingly, we affirm the order denying his petition for resentencing.  We need not address the trial court's finding that Fitts acted with express malice.

## BACKGROUND

### A. The jury convicted Fitts of murder, among other crimes.  We affirmed the judgment on direct appeal.

The Los Angeles County District Attorney charged Fitts with the murder of Dimmitt (count 1, § 187, subd. (a)); attempted robbery of Dimmitt (count 2, §§ 211, 664); attempted robbery of

---

[1] Undesignated statutory references are to the Penal Code.

2

Steven Watkins (count 3); and attempted murder of Watkins (count 4, §§ 187, subd. (a), 664).

Below, we summarize the trial evidence to the extent it is relevant to this appeal.

### 1. Trial evidence

Watkins (the surviving victim) testified to the following events on March 7, 1992: Around 2:30 a.m., he and Dimmitt, who was his friend and neighbor, attended a party. Dimmitt left the party around 2:45 a.m., and Watkins left around five minutes later. On the way to his house, Watkins passed Dimmitt's house, where he saw Dimmitt exiting his parked car. He also saw Fitts (then 23 years old) and another man (Casey Carroll) exit a car, walk to a gate on the side of Dimmitt's house, and begin "lurking" there.[2]

Watkins pulled alongside Dimmitt's car, pointed to Fitts and Carroll, and exited his car. Watkins and Dimmitt walked to the curb. They were unarmed.

Fitts and Carroll appeared to be urinating by Dimmitt's fence. When they finished, they quickly walked toward Watkins and Dimmitt. Fitts and Carroll drew guns.

Fitts stopped and faced Watkins from a distance of six or seven feet, while Carroll faced Dimmitt. Fitts stood closer to the two men than Carroll did. Dimmitt asked what Fitts and Carroll were doing by his fence, and Carroll responded, "What do you mean what are we doing?"

---

[2] At a separate trial, Carroll was convicted of murder and two counts of attempted robbery. This court affirmed his convictions. (*People v. Carroll* (Jan. 16, 1997, B096444) [nonpub. opn.].) Although Carroll was not identified by name to Fitts's jury, we use Carroll's name for clarity.

Carroll asked Watkins and Dimmitt what gang they were affiliated with.  Watkins and Dimmitt each said, "We don't gang bang."  Carroll said he was from the Schoolyard Crip gang.

Carroll pointed his gun at Dimmitt's chest.  Fitts pointed his gun at Watkins, below his abdomen.[3]  Dimmitt said, "It shouldn't have to be like this."

Carroll said, "This is a jack for your gold."  Watkins was wearing a gold necklace and Dimmitt was wearing a gold bracelet.  Watkins began to take off his necklace, as Dimmitt again protested that it did not "have to be like this."

Carroll demanded the men's gold three times.  Although Fitts was silent throughout the encounter, he and Carroll appeared to be acting together.  Fitts kept his gun drawn throughout the encounter, which lasted about three minutes.

Eventually, Carroll raised his gun to Dimmitt's head.  Dimmitt used his right hand to attempt to strike the gun from Carroll's hand.

Fitts fired the first gunshot, which struck Watkins in his right leg.  Carroll then shot Dimmitt, who fell to the ground.[4]

Watkins turned and ran.  He heard but did not see a third gunshot, which struck his buttocks.  He did not know who fired the shot.  He then heard a fourth and final gunshot.

---

[3] Neither Watkins nor any other witness testified, as Fitts asserts on appeal, that Fitts held his gun in a "low ready position."

[4] Watkins initially testified that Carroll, not Fitts, was the first shooter.  Thereafter, he repeatedly testified that Fitts shot first.  He also testified that he had identified Fitts as the first shooter in a pretrial statement given to police within three days after the shooting.

Watkins ran away, jumped fences, and ran through an alley. As he exited the alley, the car that Fitts and Carroll had exited passed by him, and he heard laughing and the car's horn.[5] After the car drove off, Watkins ran to a neighbor's house, from which an ambulance called by the neighbor transported him to a hospital. He underwent surgery and was hospitalized for three days.

Dimmitt died from two gunshot wounds to the back of his chest.

During a police interview, Fitts initially denied involvement in the attempted robberies but eventually admitted that he was involved and that he fired one shot at a fleeing victim.

In Fitts's defense, his mother testified that he received Social Security Income because he was legally blind. From second grade to his high school graduation,[6] Fitts was enrolled in special education classes because of his poor vision and his academic level (he was "slow" and "couldn't read").

### 2. Judgment

The jury was instructed on aiding and abetting and first degree felony murder based on attempted robbery. The People argued that Fitts was guilty of first degree felony murder because he aided and abetted Carroll in attempting to rob Dimmitt and Watkins, and because Carroll killed Dimmitt during the

---

[5] No evidence identified Fitts as the driver or as the source of the laughter that Watkins heard from the car.

[6] Outside the presence of the jury, Fitts's mother testified that he graduated from high school at age 19 (four years before he committed the offenses at age 23).

attempted robberies.  Fitts argued that he was misidentified or, in the alternative, that he was guilty only of assault with a deadly weapon (a lesser included offense of the attempted murder of Watkins charged in count 4) because he did not know that Carroll intended to rob the victims and he fired only one, accidental shot at Watkins.

The jury convicted Fitts of the first degree murder of Dimmitt and found true the allegations that Fitts committed the murder while committing attempted robbery and that a principal was armed with a firearm.  The jury also convicted Fitts of the attempted second degree robberies of Dimmitt and Watkins and the attempted voluntary manslaughter of Watkins (another lesser included offense of the attempted murder charge), and found true associated firearm and great bodily injury allegations.

The trial court sentenced Fitts to imprisonment for life without possibility of parole, plus 15 years and six months.  On Fitts's direct appeal, we affirmed the judgment as modified by staying the sentence on count 2 (attempted robbery of Dimmitt) and striking the great bodily injury enhancement to count 4 (attempted voluntary manslaughter of Watkins), which modifications reduced the determinate term of Fitts's sentence to 11 years and six months.[7]  (*People v. Fitts* (Jan. 29, 1999, B103607) [nonpub. opn.] at pp. 11-12.)

---

[7] In August 2025 (during the pendency of this appeal), Governor Gavin Newsom commuted Fitts's sentence to 31 years to life.

**B. Fitts petitioned for resentencing under section 1172.6. The trial court denied the petition, finding beyond a reasonable doubt that Fitts acted with express malice or that he was a major participant in the attempted robberies and acted with reckless indifference to human life.**

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and narrowed the felony-murder rule. (*People v. Patton* (2025) 17 Cal.5th 549, 558 (*Patton*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule set forth in section 189, subdivision (e). "If a defendant was not the actual killer or an aider and abettor acting with intent to kill, the [felony-murder] statute now requires that the defendant be a major participant in the felony who acted with reckless indifference to human life." (*People v. Emanuel* (2025) 17 Cal.5th 867, 875 (*Emanuel*).)

To provide relief to those with existing murder convictions based on now-invalid theories, the Legislature created a path to resentencing. (§ 1172.6, subd. (a); Stats. 2021, ch. 551, § 1.) "Petitioners seeking relief under section 1172.6 must, first, file a facially valid petition that states the statutory requirements for relief (*id.*, subd. (b)), and second, make a 'prima facie showing' (*id.*, subd. (c)), before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of resentencing . . . (*id.*, subd. (d))." (*Patton*, *supra*, 17 Cal.5th at p. 556.)

7

In July 2022, Fitts petitioned for resentencing under section 1172.6.  The People conceded that Fitts made a prima facie showing.

The trial court held an evidentiary hearing, at which the parties and the court relied on the trial record.  The People argued that Fitts remained guilty of murder under two still-valid theories: (1) the revised felony-murder rule; and (2) direct aiding and abetting with express or implied malice.  Fitts disputed both theories.

The trial court denied the petition on the following grounds: "[A]cting as an independent fact finder, the Court finds . . . by proof beyond a reasonable doubt, that the Petitioner is a direct aider and abettor who harbored express malice.  Alternatively, as an independent fact finder, the Court finds beyond a reasonable doubt, that the Petitioner was a major participant who acted with reckless indifference to human life."

Fitts filed a timely notice of appeal.

## DISCUSSION

### A.    Standard of review

"We review a resentencing court's denial order following a section 1172.6 evidentiary hearing for substantial evidence." (*People v. Player* (2026) 119 Cal.App.5th 931, 963 (*Player*).) "Under that standard, 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  'We resolve all evidentiary conflicts and questions of credibility in favor of the judgment.  [Citation.]  We cannot

8

reweigh the evidence or reassess witness credibility on our own.' " (*Ibid.*) Rather than limit our review to the trier of fact's express findings, we " ' " 'presume[] in support of the judgment the existence of every fact the trier *could* reasonably deduce from the evidence.' " ' " (*People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*), italics added.) " ' "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the [fact finder]'s verdict." ' " (*People v. Diaz* (2026) 118 Cal.App.5th 545, 558 (*Diaz*).)

**B.    Substantial evidence supports the trial court's finding that Fitts is guilty of murder under the revised felony-murder rule.**

As noted, "[i]f a defendant was not the actual killer or an aider and abettor acting with intent to kill, the [felony-murder] statute now requires that the defendant be a major participant in the felony who acted with reckless indifference to human life." (*Emanuel, supra,* 17 Cal.5th at p. 875.) We consider the sufficiency of the evidence supporting the trial court's major-participant and reckless-indifference findings in turn.

**1.    Substantial evidence supports the trial court's finding that Fitts was a major participant in the attempted robberies.**

*People v. Banks* (2015) 61 Cal.4th 788, 803 (*Banks*), "identified a list of considerations relevant to the major participant prong." (*Emanuel, supra,* 17 Cal.5th at p. 883.) The *Banks* factors are: " 'What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal

9

weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?' " (*People v. Strong* (2022) 13 Cal.5th 698, 706 (*Strong*).)  "[N]one of these considerations is dispositive.  Rather, '[a]ll may be weighed in determining the ultimate question, whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major" [citations].' " (*Ibid.*)

Here, the first *Banks* factor (the defendant's role in planning the fatal criminal enterprise) does not support a major-participant finding because no evidence indicated that Fitts planned the attempted robberies.

However, the second *Banks* factor (the defendant's role in supplying or using lethal weapons) strongly supports the trial court's finding that Fitts was a major participant in the attempted robberies.  Fitts drew his gun while walking toward the victims, before the victims did anything other than observe Fitts and Carroll urinating by Dimmitt's fence.  Fitts aimed his gun below Watkins's abdomen.  Fitts continued aiming his gun at Watkins for about three minutes, even as Carroll repeatedly demanded the victims' gold jewelry and eventually brought his gun from Dimmitt's chest to his head.  Moreover, the trial court reasonably could have credited Watkins's testimony that Fitts fired the first gunshot, i.e., that Fitts shot Watkins *before* Carroll

10

shot Dimmitt.[8]  Finally, the evidence reasonably supported the trial court's express finding that Fitts fired another shot, which struck Watkins's buttocks as he fled.  Thus, Fitts played a major role in using lethal weapons during the attempted robberies.

The third *Banks* factor (the defendant's awareness of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants) has little relevance on this record.  No evidence indicated that Fitts was aware of any past experience or conduct on Carroll's part that posed particular dangers.  Although no evidence specifically addressed Fitts's awareness of the dangers posed by the firearms used and by the nature of the attempted robberies at gunpoint, the trial court reasonably could have inferred from the obvious nature of those dangers that Fitts was aware of them.

The fourth *Banks* factor (whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the actual murder, and whether his conduct played a particular role in the death) strongly supports the trial court's finding that Fitts was a major participant in the attempted robberies.  Fitts was present before and during the killing.  He was in a position to prevent the murder by dissuading Carroll from demanding the victims' gold jewelry and convincing him to leave.  Instead, he facilitated the murder by holding Watkins at gunpoint and firing the first shot into Watkins's leg, restraining

_____

[8] The trial court did not expressly find that Fitts fired the first gunshot, because it found that Fitts was guilty of murder under current law regardless of whether he shot first or only after Carroll.  We presume that Fitts shot first because the trial court reasonably *could* have made that finding.  (See *Morales*, *supra*, 10 Cal.5th at p. 88; *Diaz*, *supra*, 118 Cal.App.5th at p. 558.)

11

Watkins from resisting the attempted robberies.  The trial court reasonably could have found that Fitts's conduct in firing the first gunshot played a particular role in Dimmitt's death by escalating the confrontation to the level of deadly force, encouraging Carroll to fatally shoot Dimmitt.

The final *Banks* factor (the defendant's conduct after the use of lethal force) also supports the trial court's major-participant finding.  As noted, after both Fitts and Carroll used lethal force by firing the initial shots into Watkins and Dimmitt, respectively, Fitts fired another shot that struck Watkins as he fled.  Further, the evidence reasonably supported the trial court's finding that after the shooting, Fitts fled the scene with Carroll in the car that they had exited earlier, leaving Dimmitt on the ground where he had fallen after being shot, without rendering or summoning aid.  No evidence supports Fitts's assertion that he believed aid would be futile.  Indeed, as Fitts himself observes, "it is unclear if [he] knew the state of Dimmitt's injuries."  The evidence supported the trial court's finding that Fitts was unconcerned whether Dimmitt was dying or merely injured.

Considering the *Banks* factors on balance, we conclude that substantial evidence supports the trial court's finding that Fitts was a major participant in the attempted robberies.

## 2. Substantial evidence supports the trial court's finding that Fitts acted with reckless indifference to human life.

*People v. Clark* (2016) 63 Cal.4th 522, 617 (*Clark*), "set out a nonexhaustive list of factors for courts to consider when determining whether reckless indifference existed." (*Diaz, supra,* 118 Cal.App.5th at p. 558.)  The *Clark* factors overlap with the *Banks* factors.  (*Strong, supra,* 13 Cal.5th at p. 706.)  The *Clark*

12

factors are " 'use of or awareness of the presence of a weapon or weapons, physical presence at the scene and opportunity to restrain confederates or aid victims, the duration of the crime, knowledge of any threat the confederates might represent, and efforts taken to minimize risks.' " (*Emanuel*, *supra*, 17 Cal.5th at p. 884.) " ' "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*Id.* at p. 885.)

" 'Courts of Appeal have recognized that "a defendant's youth is a[nother] relevant factor in determining whether the defendant acted with reckless indifference to human life." ' " (*Diaz*, *supra*, 118 Cal.App.5th at p. 558.) "This is because the ' "hallmark features" of youth,' including ' "immaturity, impetuosity, and failure to appreciate risks and consequences," ' bear upon a youthful offender's culpability." (*Id.* at p. 559.)

Here, for substantially the same reasons underlying our conclusion regarding the trial court's major-participant finding, we conclude that substantial evidence supported the trial court's finding that Fitts acted with reckless indifference to human life. (See *Strong*, *supra*, 13 Cal.5th at p. 706 ["the major participant and reckless indifference elements ' "significantly overlap" ' "].)

The first and second *Clark* factors (the defendant's use of weapons and the defendant's opportunity, being present at the scene, to restrain confederates or aid victims) strongly support the trial court's reckless-indifference finding, for the same reasons we explained regarding the second and fourth *Banks* factors (the defendant's role in using lethal weapons and the defendant's position, being present, to facilitate or prevent the murder). Fitts used his gun to restrain Watkins throughout the encounter, fired the first gunshot, and fired another shot that

13

struck Watkins as he fled.  He did not restrain Carroll or attempt to aid the victims.

The third *Clark* factor (the duration of the crime) also supports the trial court's reckless-indifference finding.  The attempted robberies took place over approximately three minutes.  Three minutes provided Fitts sufficient time to appreciate the risks that the attempted robberies at gunpoint posed to the victim's lives.  Fitts continued pointing his gun at Watkins throughout the three minutes, even as Carroll repeatedly demanded the victims' gold jewelry and Dimmitt repeatedly protested that it did not need to be that way, placing Fitts on notice that Dimmitt might (as he ultimately did) physically resist.

The fourth *Clark* factor (the defendant's knowledge of any threat his confederates might represent) has little relevance on this record, for the same reasons we explained regarding the third *Banks* factor (the defendant's awareness of particular dangers posed by the other participants' past experience or conduct, the nature of the crime, or the weapons used).

The final *Clark* factor (the defendant's efforts to minimize risks) strongly supports the trial court's finding that Fitts acted with reckless indifference to human life.  Fitts could have minimized the risks by dissuading Carroll from demanding the victims' gold jewelry and convincing him to leave.  Instead, he increased the risks by holding Watkins at gunpoint for three minutes and firing the first gunshot.  Fitts's shooting of Watkins escalated the confrontation in a manner that posed an obvious danger of encouraging Carroll to fatally shoot Dimmitt.  Indeed, Fitts's conduct posed a risk of motivating Carroll to fatally shoot both Dimmitt and Watkins, to eliminate both witnesses to the

14

shooting that Fitts initiated. Fitts further increased that risk by firing another shot that struck Watkins as he fled, which could have led Carroll to join Fitts in shooting at Watkins.

Considering the *Clark* factors on balance, we conclude that substantial evidence supports the trial court's finding that Fitts acted with reckless indifference to human life.

That Fitts was 23 years old at the time of the offenses does not override the balance of the *Clark* factors. At 23, Fitts was a young adult, not a minor. (See *People v. Oliver* (2023) 90 Cal.App.5th 466, 489 ["[Defendant] was 23 at the time of the crime. Presumably, the presumption of immaturity weakens as a defendant approaches 26"].) Fitts presented no evidence suggesting that his age precluded his understanding of the risks inherent in robbing two men at gunpoint, escalating the confrontation by firing the first gunshot, firing another shot into a fleeing victim, and leaving the other gunshot victim unaided where he fell on the ground. (Cf. *People v. Mitchell* (2022) 81 Cal.App.5th 575, 595 ["Youth can distort risk calculations. Yet every 18 year old understands bullet wounds require attention. The fact of youth cannot overwhelm all other factors"].) Thus, the trial court reasonably found that Fitts's age did not prevent him from understanding the seriousness of his actions.[9]

---

[9] The 2025 order commuting Fitts's sentence stated that the Governor considered Fitts's youth at the time of his offenses, among other factors. As the order further stated, the Governor's act of clemency did not minimize or forgive Fitts's serious criminal conduct. (See *Santos v. Brown* (2015) 238 Cal.App.4th 398, 413 ["Commutation is a reduction in punishment; a pardon is the remission of guilt"]; *People v. Vasquez* (2001) 25 Cal.4th 1225, 1230 [" 'action in mitigation of the defendant's punishment

15

Fitts argues that his "diminished cognitive abilities" impaired his appreciation of the risks. However, he cites no evidence other than his mother's testimony that he was enrolled in special education classes from second grade to his high school graduation (at age 19) because he was legally blind and "slow." That testimony did not address Fitts's ability at age 23 to appreciate the risks to human life posed by attempting to rob two victims at gunpoint and initiating a shooting. Nor did the testimony compel the trial court to find that Fitts did not appreciate the risks. "We cannot reweigh the evidence . . . ." (*Player*, *supra*, 119 Cal.App.5th at p. 963.)

In short, we conclude that substantial evidence supports the trial court's finding that Fitts is guilty of murder under current law because he was a major participant in the attempted robberies and acted with reckless indifference to human life. Accordingly, we affirm the trial court's denial of Fitts's petition for resentencing.

---

should not affect the fact that his guilt has been finally determined according to law' "].)

## DISPOSITION

The order denying Fitts's petition for resentencing is affirmed.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.